The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Plaintiff's average weekly wage is $349.20, which yields a compensation rate of $232.92 per week.
4. Plaintiff is alleging an injury by accident that occurred on August 16, 1996 resulting in an injury to the right knee.
5. The defendant-employer has denied liability.
6. Plaintiff is seeking four months of temporary total disability benefits, medical expenses, and a rating, if any.
7. The issues to be determined by the Commission are whether the plaintiff, in fact, suffered from an injury by accident as alleged, and whether there is a causal connection between plaintiff's present condition and the original alleged injury by accident.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is forty-three years old. She has been employed at Lexington Furniture for approximately nineteen years as a glaze wiper. Plaintiff had been a glaze wiper during the entire period of her employment at Lexington. Plaintiff's normal job duties as a glaze wiper include using a cloth to wipe glaze off of furniture and included lifting and turning tables. Plaintiff described her job at Lexington Furniture from 1978 to the present as "wipe glaze off coffee tables".
2. The furniture which Plaintiff would wipe came to her on pallets on a conveyor belt. Her normal routine included climbing a platform to wipe the tops of furniture pieces and lifting, tilting, or turning tables, including coffee tables.
3. On the date of the alleged injury, August 16, 1996, Plaintiff was performing her normal job as a glaze wiper. Plaintiff alleges that as she was lifting a coffee table in the Bob Timberlake line with the assistance of a co-worker, she felt a pull in her right knee.
4. Plaintiff had sustained a prior right knee injury in 1990, as a result of which she underwent knee surgery by Dr. Boyd Watts on May 16, 1990 and again on September 4, 1990. Plaintiff was rated by Dr. Watts with a 10% permanent partial disability of the right knee as a result of the 1990 injury.
5. Since October of 1995, Plaintiff had been under medical care for a back injury which occurred when she lifted a fifty pound child. She was seen by Dr. Stephen Furr, an orthopaedic surgeon, on March 27, 1996, complaining of pain in her lower back and pain down her legs, as well as numbness and tingling. On May 14, 1996, she was seen by Dr. Furr, complaining that her right leg was giving way and that she was having continued numbness and tingling. Dr. Furr suspected a possible type of radiculopathy or some neurological loss. He ordered nerve conduction studies.
6. Plaintiff admitted that she began to experience problems with her knee before the alleged date of injury. She dates the onset of her knee symptoms to sometime in May of 1996. She reported to the plant that her right knee began to "give way" on her in May.
7. When Plaintiff's nerve conduction studies came back normal, Dr. Furr began to suspect a knee problem rather than a radiculopathy. On June 13, 1996, two months prior to the date of alleged injury, he examined Plaintiff's knee and observed that McMurray's sign was positive, and that Plaintiff had a slight effusion and infrapatellar tenderness. He injected the knee, and indicated that if she did not improve, he would obtain an MRI. Dr. Furr released Plaintiff to return to work on June 18, 1996, and did not place her under any work restrictions.
8. On July 11, 1996, one month prior to the date of alleged injury, Plaintiff returned to Dr. Furr complaining of continued knee pain. He prescribed anti-inflammatory medication and medication for pain. He further indicated that since the previous injection did not help Plaintiff, he felt she may have to have an MRI. According to Dr. Furr's records, Plaintiff cancelled three subsequent appointments scheduled for July 31, August 5, and August 8, 1996.
9. Plaintiff returned to Dr. Furr on August 22, 1996. His records include no history of the alleged injury at work on August 16, 1996. Plaintiff simply indicated to Dr. Furr on that date that she was still having pain in her knee. The records do not indicate that Plaintiff complained of any change or increase in her symptoms from the time of the prior visit. Dr. Furr again indicated that if Plaintiff did not improve, she may have to have an MRI.
10. Plaintiff's prior medical history also includes treatment and medication for diabetes and high blood pressure.
11. Plaintiff did not begin to lose time from work following the alleged incident of August 16, 1996 until she underwent knee surgery on October 29, 1996. She returned to work for Defendant on February 24, 1997. During her absence she received payment under Lexington Furniture's group disability plan for a period of thirteen weeks.
12. In her testimony at the hearing, Plaintiff contended that she repeatedly had to climb up and down a platform to wipe the tops of furniture pieces (including the dressers, beds and chests that were routinely run at this particular plant) over a prolonged period of time, caused her to have pain in her knee in beginning in May, 1996 and continuing thereafter. Plaintiff further contended that approximately two weeks before the date of alleged injury she first began to run the particular type of Bob Timberlake coffee table which she was handling at the time of the alleged injury. While Plaintiff's supervisor Grey Hobbs, testified that the same tables had been run through Plaintiff's department since January 1996, Plaintiff contended that she nonetheless had not handled these specific coffee tables until August 1996.
13. Plaintiff did not sustain an injury by accident on August 16, 1997, in that she experienced an episode of pain in her knee while performing a task that was a part of her established work routine. Wiping glaze on the specific Bob Timberlake coffee table which plaintiff was handling at the time of the injury had become a part of plaintiff's work routine, in that she had been working on those same tables for at least two weeks prior to August 16, 1997.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
Since plaintiff did not suffer an injury by accident because she was performing work which as a normal part of her work routing, she is not entitled to benefits under the Workers' Compensation Act. Trudell v. Seven Lakes Heating AirConditioning Co., 46 N.C. App. 22, 264 S.E.2d 360 (1980) stands for the proposition that one to two weeks of a particular activity is enough to make that activity a part of the normal work routine.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby denied.
2. Each side shall pay its own costs.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER